**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION**

| | | |
|---|---|---|
| **SFA SYSTEMS, LLC,** | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | **CASE NO. 6:09-cv-340** |
| **v.** | § | **PATENT CASE** |
| | § | |
| **1-800-FLOWERS.COM, INC., et al,** | § | |
| | § | |
| *Defendants.* | § | |
| | | |
| **SFA SYSTEMS, LLC,** | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | **CASE NO. 6:10-cv-300** |
| **v.** | § | **PATENT CASE** |
| | § | |
| **BIGMACHINES, INC., et al,** | § | |
| | § | |
| *Defendants.* | § | |

**JOINT SUBMISSION RE CLAIM TERMS OF U.S. PATENT NO. 6,067,525
THAT HAVE BEEN PREVIOUSLY CONSTRUED**

Pursuant to the Court's Order dated February 11, 2011 in the above-captioned cases ("Current Cases"), SFA Systems, LLC ("SFA"), and Defendants, Barnes & Noble, Inc., Barnesandnoble.com, LLC, GameStop, Corp., GameStop, Inc., GameStop.com, Inc., Gander Mountain Company, Overton's, Inc., J&R Electronics, Inc., Newegg, Inc., Newegg.com, Inc., The Timberland Company, BigMachines, Inc., Enterasys Networks, Inc., Ricoh Americas Corporation, Hyundai Motor America, Inc., and Carestream Health, Inc. (collectively, "Defendants") have met and conferred and hereby jointly make the following submission regarding claim terms that this Court has previously construed.

## I.  PREVIOUSLY CONSTRUED CLAIM TERMS IN DISPUTE

The Court previously construed certain terms of U.S. Patent No. 6,067,525 (the "'525 Patent") in *SFA Systems, LLC v. Infor Global Solutions (Michigan), Inc., et al.*, Case No. 6:07-cv-67 (the "*Infor* Case").  None of the Defendants in the Current Cases were party to the prior *Infor* Case.  The Court issued its claim construction opinion in the *Infor* Case on February 23, 2009.  SFA and the Defendants in the Current Cases have met and conferred and determined that the Court has previously construed the following claim terms:[1]

1. "changes in state characteristic of an event"

2. "inferring"

3. "inferring occurrence of an event"

4. "inferring . . . a context"

5. "subsystem"

6. "event manager"

---

[1] The Court's claim construction opinion also includes a construction for "context," to which the parties to the *Infor* Case agreed during claim construction.

The Court's claim construction opinion also includes a construction for "context," to which the parties to the *Infor* Case agreed during claim construction. SFA contends that the Court also "construed" this claim term as well and did not blindly adopt the parties' agreed construction.

In an effort to reduce the number of terms before the Court, the Defendants have agreed to SFA's proposed construction for "inferring" and "inferring occurrence of an event," as identified in the parties' P.R. 4-3 Joint Claim Construction Statement. Further to that effort, Defendants hereby also agree to SFA's proposed construction for "changes in state characteristic of an event," and thus withdraw their proposed construction identified in the parties' P.R. 4-3 Joint Claim Construction Statement.

The Defendants, however, contend that good cause exists for allowing the Defendants to brief proposed constructions for four (4) terms: "plurality of subsystems," "event manager," "inferring . . . a context," and "context." The parties' respective positions about the Court's prior constructions of these terms and their corresponding discussion of whether there is good cause for submitting these terms for construction, are set forth separately in Sections II and III below.

## II.   **PLAINTIFF'S SUBMISSION**

SFA contends that, in the *Infor* case, the Court carefully considered and decided upon the proper construction of all of the claim terms identified above, including the term "context." The time and resources of the parties and the Court, therefore, will not be served by relitigating the construction of these claim terms. SFA is willing to enter into a stipulation providing that the Defendants in the Current Cases have preserved for appeal its proposed constructions of these claim terms as set forth in the Joint Claim Construction and Prehearing Statement.

SFA contends that the Defendants' submission below goes far beyond making the showing of good cause required by the Court, and constitutes a premature "mini brief" on the merits of its claim construction positions regarding these terms. The Defendants' submission of

a declaration from their expert witness on the merits of various claim construction issues underscores this point.  Needless to say, SFA has something to say about these arguments, but it will save making its arguments (and submitting its own expert witness declaration already provided to Defendants) for its opening claim construction brief to be filed on Friday.

## III.    DEFENDANTS' SUBMISSION

As stated above, Defendants have agreed to SFA's proposed constructions for "inferring" and "inferring an event has occurred" and have further agreed to SFA's proposed construction for "changes in state characteristic of an event."  However, Defendants contend that good cause exists for briefing the following four (4) disputed terms based on new issues of law and evidence not previously raised or before the Court in the prior *Infor* Case:  "plurality of subsystems," "event manager," "inferring . . . a context," and "context."

### A.    **"plurality of subsystems"**

Defendants have good cause for construing this term because Defendants raise a new question of law not previously before the Court in the prior *Infor* Case.  Specifically, Defendants contend this claim limitation is subject to 35 U.S.C. § 112 ¶ 6 because it fails to recite sufficiently definite structure or else recites function without reciting sufficient structure for performing that function.  No party to the *Infor* Case raised this legal issue and thus it was not properly before the Court during claim construction.  *See Infor* Case, No. 6:07-cv-67, dkt. nos. 172 (P.R. 4-5(a) brief), 186 (P.R. 4-5(b) brief), 193 (P.R. 4-5(c) brief), 211 (opinion).  Thus, Defendants respectfully request that the Court allow them to brief this issue because Defendants raise a new question of law concerning a limitation present in all asserted claims.

As a further showing of good cause, Defendants contend that the Federal Circuit has consistently held that "a limitation lacking the term 'means' may overcome the presumption against means-plus-function treatment if it is shown that the claim term fails to recite sufficiently

definite structure or else recites function without reciting sufficient structure for performing that function." *Mass. Inst. of Tech. v. Abacus Software*, 462 F.3d 1344, 1353 (Fed. Cir. 2006) (citing *Watts v. XL Sys., Inc.*, 232 F.3d 877, 880 (Fed. Cir. 2000)); *see also Aspex Eyewear, Inc. v. Altair Eyewear, Inc.*, 288 Fed. Appx. 697, 704 (Fed. Cir. 2008) (applying § 112 ¶ 6 because "there is no indication in the record that 'retaining mechanism' connotes definite structure to a person of ordinary skill in the art"); *Mas-Hamilton Group v. LaGard, Inc.*, 156 F.3d 1206, 1213-15 (Fed. Cir. 1998) (applying § 112 ¶ 6 because "even though the catch phrase is not used, the limitation's language does not provide any structure"); *Personal Audio, LLC v. Apple, Inc.*, No. 9:09-CV-111, slip op. at 42 (E.D. Tex. Jan. 31, 2011) (Clark, J.) ("Because the claim limitations at issue describe functions without reciting sufficient structure for performing those functions, the presumption flowing from the absence of the word 'means' is rebutted.").

To overcome the rebuttable presumption, Defendants will submit the declaration of Dr. Philip Greenspun[2] establishing that the term "subsystem" does not denote structure to a person of ordinary skill in the art in 1995. *See, e.g.*, *Watts*, 232 F.3d at 880-81 ("As an aid in determining whether sufficient structure is in fact recited by a term used in a claim limitation, this court has inquired into whether the term, as the name for structure, has a reasonably well understood meaning in the art."). Defendants will further submit dictionary definitions of "subsystem" confirming that a person of ordinary skill in the art in 1995 would not understand "subsystem" to denote sufficiently definite structure. *See, e.g.*, *Duratech Indus. Int'l, Inc. v. Bridgeview Mfg., Inc.*, 292 Fed. Appx. 931, 933 (Fed. Cir. 2008) ("This court has also looked to dictionary definitions to discern whether a disputed term is recognized as a noun denoting

---

[2] Defendants produced Dr. Greenspun's declaration on February 15, 2011 pursuant to the parties agreement set forth in their Joint Claim Construction Statement (Dkt. No. 247, Civ. Act. No. 6:09-CV-340). Defendants have attached the same as exhibit A for the Court's reference and per the Court's order to establish good cause. See Exh. A, Greenspun Decl. ¶¶ 28-42 (explaining a person of ordinary skill in the art's understanding of "subsystem" in the context of the surrounding claim language).

structure."). Defendants will also rely on Dr. Greenspun's declaration establishing that the plaintiff's extrinsic evidence—a single online dictionary definition retrieved January 21, 2011 equating the term to a "unit" or "device"—fails to establish that a person of ordinary skill in the art in 1995 would connect structure with the term "subsystem." *See, e.g.*, *Mass. Inst. of Tech.*, 462 F.3d at 1354 ("The generic terms 'mechanism,' 'means,' 'element,' and 'device,' typically do not connote sufficiently definite structure.").

And finally, Defendants will establish that no surrounding claim language breathes structure into the otherwise generic term, "subsystem." *See, e.g.*, *Welker Bearing Co. v. PHD, Inc.*, 550 F.3d 1090, 1096 (Fed. Cir. 2008) (applying § 112 ¶ 6 because "[n]o adjective endows the [claim term] with a physical or structural component" and "claim 1 provides no structural context for determining the characteristics of the [claim term] other than to describe its function"); *Eon Corp. IP Holdings, LLC v. Verizon Clinton Center Drive Corp.*, No. 6:08-CV-385, 2010 WL 3199626, at *13-14 (E.D. Tex. Aug. 11, 2010) (Love, Mag. J.) (applying § 112 ¶ 6 because "the claim language does not further define a generic term to add sufficient structure to avoid 112 ¶ 6"); *Inventio AG v. Thyssenkrupp Elevator Americas Corp.*, 718 F. Supp. 2d 529, 559 (D. Del. 2010) (applying § 112 ¶ 6 because "the claim language itself does not provide sufficient structure to perform the recited function").

Accordingly, Defendants have good cause for submitting "plurality of subsystems" for construction because Defendants raise for the first time a legal issue that is well-supported by both Federal Circuit precedent and the intrinsic and extrinsic evidence of record and concerns limitations present in all asserted claims.

## B.    "event manager"

As with "plurality of subsystems," Defendants have good cause for construing this term because Defendants raise a new question of law not previously before the Court in the prior *Infor*

Case.  Specifically, Defendants contend this claim limitation is subject to § 112 ¶ 6 because it fails to recite sufficiently definite structure or else recites function without reciting sufficient structure for performing that function.  No party to the *Infor* Case raised this legal issue and thus it was not properly before the Court during claim construction.  *See Infor* Case, No. 6:07-cv-67, dkt. nos. 172 (P.R. 4-5(a) brief), 186 (P.R. 4-5(b) brief), 193 (P.R. 4-5(c) brief), 211 (opinion).  Thus, Defendants respectfully request that the Court allow them to brief this issue because Defendants raise a new question of law concerning a limitation that is indisputably the heart of the claimed invention.

As a further showing of good cause, Defendants contend that the Federal Circuit has consistently held that "a limitation lacking the term 'means' may overcome the presumption against means-plus-function treatment if it is shown that the claim term fails to recite sufficiently definite structure or else recites function without reciting sufficient structure for performing that function." *Mass. Inst. of Tech.*, 462 F.3d at 1353 (citing *Watts*, 232 F.3d at 880); *see also Aspex*, 288 Fed. Appx. at 704; *Mas-Hamilton*, 156 F.3d at 1213-15; *Personal Audio*, No. 9:09-CV-111, slip op. at 42.

To overcome the rebuttable presumption, Defendants will submit the declaration of Dr. Greenspun[3] establishing that the term "event manager" does not denote structure sufficient to perform the recited functions to a person of ordinary skill in the art in 1995.  *See, e.g., Watts*, 232 F.3d at 880-81 ("[W]e further clarified that the presumption that § 112, paragraph 6 did not apply could be rebutted by showing that the claim element recited a function without reciting sufficient structure for performing that function"); *CCS Fitness, Inc. v. Brunswick Corp.*, 288 F.3d 1359, 1367-70 (Fed. Cir. 2002) (holding that a defendant "can rebut this presumption if it demonstrates that the claim term fails to 'recite sufficiently definite structure' or else recites a 'function

---

[3] See exh. A, Greenspun Decl., ¶¶ 43-62.

without reciting sufficient structure for performing that function"). Defendants will further establish that the parties' failure to identify a single dictionary definition of "event manager" in their P.R. 4-3 Joint Claim Construction statement confirms that a person of ordinary skill in the art in 1995 would not understand "event manager" to denote sufficiently definite structure. *See, e.g.*, *Duratech*, 292 Fed. Appx. at 933.

Defendants will also rely on Dr. Greenspun's declaration examining in detail each of the plaintiff's extrinsic evidence and explaining how the same establishes by a preponderance of the evidence that a person of ordinary skill in the art in 1995 would not connect structure with the term "event manager," much less structure sufficient to perform the claimed "event manager" functions.[4]  *See, e.g.*, *Mass. Inst. of Tech.*, 462 F.3d at 1354.  And finally, Defendants will establish that no surrounding claim language breathes structure into the otherwise generic term. *See, e.g.*, *Mas-Hamilton*, 156 F.3d at 1215 (applying § 112 ¶ 6 because "we do not see that the remaining terms in the claim limitation other than those defining the two functions . . . provide any structure as necessary to remove this limitation from the ambit of section 112, ¶ 6"); *Welker*, 550 F.3d at 1096; *Eon*, 2010 WL 3199626, at *14 ("Without further context, 'facilities' is essentially a nonce word encompassing virtually anything for performing the recited function."); *Inventio*, 718 F. Supp. 2d at 559; *cf. Al-Site Corp. v. VSI Int'l, Inc.*, 174 F.3d 1308, 1318-19 (Fed. Cir. 1999) (holding that §112 ¶ 6 does not apply because "the claims themselves contain sufficient structural limitations for performing those functions").

---

[4] Defendants will further show how SFA's own statements from the prior *Infor* Case directly contradict SFA's argument here that its extrinsic evidence establishes a person of ordinary skill in the art would recognize "event manager" as denoting structure sufficient to perform the recited "event manager" functions.  Indeed, SFA argues on one hand that the claimed "event manager" is novel in its opposition to summary judgment of invalidity in the *Infor* Case, but remarkably argues in the Current Cases that a person of ordinary skill in the art in 1995 would have connected with the term "event manager" the idea of structure that was sufficient to perform all the recited "event manager" functions.

Accordingly, Defendants have good cause for submitting "event manager" for construction because Defendants raise for the first time a new legal issue that is well-supported by both Federal Circuit precedent and the intrinsic and extrinsic evidence of record and concerns a claim limitation that is indisputably the heart of the claimed invention.

C.      **"inferring . . . a context"**

Although the Court previously arrived at a construction for the phrase "inferring . . . a context in which the event occurred" by combining the construction of two underlying terms, the Court did not evaluate the phrase as a whole.   According to both the specification and the prosecution history, this phrase carries a particular meaning that has not been captured in the *Infor* Case—e.g., the concept of processing in a non-linear way and evaluating the significance of customer-related information, described in more detail below.   Because the parties in the *Infor* Case never presented this issue in their claim construction briefs, the Court did not have an opportunity to consider it.   *See Infor* Case, No. 6:07-cv-67, dkt. nos. 172 (P.R. 4-5(a) brief), 186 (P.R. 4-5(b) brief), 193 (P.R. 4-5(c) brief), 211 (opinion).   Thus, Defendants submit that a new construction is necessary to interpret the phrase "inferring . . . a context" in conformity with the specification, the prosecution history, and the extrinsic evidence.

In the *Infor* Case, the Court construed "inferring…a context in which the event occurred" to mean a "logical process by which the fact that information already existing within the system that becomes relevant upon the occurrence of an event is derived by application of logical rules." *See Infor* Case, No. 6:07-cv-67, Dkt. No. 211 at 15.   Here, Defendants contend only the phrase "inferring . . . a context" requires construction, and that the phrase means: "logical process by which **the significance of customer-related** information already existing within the system **is evaluated with respect to the event** by application of logical rules **to the detected changes in state**" (emphasis added to highlight difference).

Good cause exists for the resubmission of the phrase "inferring . . . a context" because the terms as a whole possess a specific meaning, which was never briefed or considered by the Court in the *Infor* Case. Instead, the parties in that case focused whether the term "infer" was indefinite and whether it required the use of an inference engine. As a result, the Court construed the component term "inferring" and adopted the parties' agreed construction for "context" separately, and decided that there was no reason to provide an alternative construction to the phrase as whole. *See id.* at 12-15.

Here, Defendants are not contesting whether the term "infer" is indefinite and do not proffer a construction that requires the attribution of an inference engine. Rather, Defendants contend that the phrase "inferring a context" has a very particular meaning supported by both intrinsic and extrinsic evidence. For example, in order to distinguish the invention from the prior art, the applicants repeatedly stated in the prosecution history that inferring the context is not a function involving "linear processing," but rather something that is based on an "intelligent" or "educated" understanding of information surrounding the detected changes in state. *See, e.g.,* '525 Patent, 07-14-98 Amendment at 4-7. Defendants have good cause for briefing their proposed construction because the specification and extrinsic evidence directly supports this notion of evaluating and understanding the significance of information surrounding events. *See, e.g.,* '525 Patent at 32:57-33:4 ("Further intelligence may be provided in the system to **evaluate the context** in which the sales event occurs (e.g., **the significance of other information in the system**" (emphasis added)); 6/10/08 Johnson Dep. Tr., 246:1-10 ("Q: And how is it that those decisions that the system made were more educated? A. We are back to rules, how the rules were created, so rules or expert systems are helping a salesperson."). Because the briefing in the *Infor* Case failed to analyze the specification, the prosecution history, or inventor testimony for

the meaning of the phrase "inferring . . . the context" as a whole as proposed herein, and thus the Court was not called upon to address the same in the *Infor* Case, Defendants respectfully request that briefing be allowed in the Current Cases.

**D.     "context"**

Defendants have good cause for construing this term, which appears in every asserted independent claim, because this Court was not previously asked to construe it in the prior *Infor* Case. Instead, the parties in the prior litigation agreed upon a construction of the term, which the Court adopted for that litigation: "information already existing within the system that becomes relevant upon the occurrence of an event." *See Infor* Case, No. 6:07-cv-67, Dkt. No. 211 at 15.

Defendants largely follow the previous agreed upon construction, but contend that the phrase must be construed to mean: "customer-related information already existing within the system that becomes relevant upon the occurrence of an event." (emphasis added to highlight difference). Good cause exists for the submission of the term "context" because the term possesses a specific meaning supported by intrinsic and extrinsic evidence, which this Court did not have an opportunity to consider when it adopted the construction agreed to by the previous parties. Defendants thus raise a new question of law not previously before the Court in the prior *Infor* case concerning a limitation present in all asserted claims.

Dated: February 22, 2011                        Respectfully submitted,

BUETHER JOE & CARPENTER, LLC                   FISH & RICHARDSON P.C.


By: */s/ Eric W. Buether*                       By:  /s/ Neil J. McNabnay
Eric W. Buether                                 Neil J. McNabnay
State Bar No. 03316880                          njm@fr.com
Eric.Buether@BJCIPLaw.com                       ***Lead Attorney***
Christopher M. Joe                              Britnee M. Reamy (Serve)
State Bar No. 00787770                          bmr@fr.com
Chris.Joe@BJCIPLaw.com                          1717 Main Street
Brian A. Carpenter                              Suite 5000
State Bar No. 03840600                          Dallas, TX  75201
Brian.Carpenter@BJCIPLaw.com                    214-747-5070
                                                214-747-2091 FAX
1700 Pacific Avenue
Suite 2390                                      Ajit Dang
Dallas, Texas 75201                             dang@fr.com
Telephone: (214) 466-1271                       FISH & RICHARDSON PC - CTLANTA
Facsimile: (214) 635-1827                       1180 Peachtree Street NE
                                                21st Floor
Andrew Wesley Spangler                          Atlanta, GA 30309
State Bar No. 24041960                          404-892-5005 Tel
Spangler Law PC                                 404-892-5002 Fax
104 N. Houston St., Suite 135
Marshall, Texas  75670                          **ATTORNEYS FOR DEFENDANTS**
Telephone:  (903) 935-3443                      **BARNES AND NOBLE, INC.**
Facsimile:   (903) 938-7843                     **BARNESANDNOBE.COM LLC**
spangler@spanglerlawpc.com                      **BIGMACHINES, INC.**
                                                **CARESTREAM HEALTH, INC.**
David M. Pridham                                **ENTERASYS NETWORKS, INC.**
RI State Bar No. 6625                           **J & R ELECTRONICS, INC.**
Law Office of David Pridham                     **RICOH AMERICAS CORPORATION**
25 Linden Road
Barrington, Rhode Island 02806
Telephone:  (401) 633-7247
Facsimile:   (401) 633-7247
david@pridhamiplaw.com

**ATTORNEYS FOR PLAINTIFF**
**SFA SYSTEMS, LLC**

POTTER MINTON

By:  /s/ Douglas Ray McSwane, Jr.
Douglas Ray McSwane, Jr.
dougmcswane@potterminton.com
***Lead Attorney***
P.O. Box 359
Tyler, TX 75710
903-597-8311 Tel
903-593-0846 Fax

Gene C. Schaerr
gschaerr@winston.com
Geoffrey P. Eaton
geaton@winston.com
John Moss
jwmoss@winston.com
Jacob Loshin
jloshin@winston.com
Winston & Strawn - DC
1700 K Stereet, NW
Washington, DC 20006
202-282-5000 Tel
202-282-5100 Fax

Peter C. McCabe, III
pmccabe@winston.com
Winston & Strawn - Chicago
35 W Wacker Drive
Chicago, IL 60601
312-558-5600 Tel
312-558-5700 Fax

**ATTORNEYS FOR HYUNDAI MOTOR
AMERICA, INC.**

KLARQUIST SPARKMAN, LLP

By:   /s/ Todd M. Siegel
      Jeffrey S. Love
      Jeffrey.love@klarquist.com
      Todd M. Siegel
      todd.siegel@klarquist.com
      121 S.W. Salmon Street, Suite 1600
      Portland, Oregon 97204
      Telephone:  (503) 595-5300
      Facsimile:  (503) 595-5301

**ATTORNEYS FOR DEFENDANTS
GAMESTOP CORP.
GAMESTOP, INC.
GAMESTOP.COM, INC.**

THOMPSON COBURN - ST. LOUIS

By:   /s/ Dean Franklin
      Dean Franklin
      dfranklin@thompsoncoburn.com
      Mathew A. Braunel
      mbraunel@thompsoncoburn.com
      One US Bank Plaza
      27th Floor
      St. Louis, MO 63101
      Telephone:  (314) 552-6106
      Fax:  (314) 552-7106

**ATTORNEYS FOR DEFENDANTS
GANDER MOUNTAIN COMPANY
OVERTON'S, INC.**

| | | | |
|---|---|---|---|
| ZARIAN MIDGLEY & JOHNSON, PPLC | | ORRICK HERRINGTON & SUTCLIFFE - IRVINE | |

By: /s/ Lane M. Chitwood
   Lane M. Chitwood
   chitwood@zmjlaw.com
   Matthew Whipple
   whipple@zmjlaw.com
   John N. Zarian
   zarian@zmjlaw.com
   Cathy Pontak
   pontak@zmjlaw.com
   960 Broadway Avenue
   Suite 2500
   Boise, ID 83706
   Debra Elaine Gunter
   debby@yw-lawfirm.com
   Herbert A. Yarbrough, III
   trey@ yw-lawfirm.com
   100 E. Ferguson Street
   Suite 1015
   Tyler, TX 75702
   Telephone:  (903) 595-3111

**ATTORNEYS FOR DEFENDANTS
NEWEGG INC.
NEWEGG.COM INC.**

By: /s/ M.P. Wine (Mark) LEAD
   M.P. Wine
   mwine@orrick.com
   Andrew De La Cruz
   adelacruz@orrick.com
   Benjamin Lin
   blin@orrick.com
   Cynthia A. Lock
   clock@orrick.com
   4 Park Plaza
   Suite 1600
   Irvine, CA 92614
   Telephone:  (949) 567-6700
   Fax:  (949) 567-6710

   Bobby L. Vincent
   lancev@rllawfirm.net
   gayf@ rllawfirm.net
   RITCHESON LAUFFER VINCENT &
   DUKES
   2 American Center
   821 ESE Loop 323, Suite 530
   Tyler, TX 75701

**ATTORNEYS FOR DEFENDANT
THE TIMBERLAND COMPANY**

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a) on February 23, 2011.


*/s/ Eric W. Buether*